**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**AMY FRENCH, a person with a disability, by her**
**parent GARY FRENCH,**

                                        **Plaintiff,**

                   **v.**                                        **5:04-CV-434**
                                                                  **(FJS/ATB)**

**NEW YORK STATE DEPARTMENT OF**
**EDUCATION; FAYETTEVILLE-MANLIUS**
**BOARD OF EDUCATION; DR. PHILLIP**
**MARTIN, Superintendent of Schools, individually**
**and in his official representative capacity; and**
**LISA MIORI-DINNEEN, Assistant Superintendent,**
**individually and in her official representative**
**capacity,**

                                        **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**WHITEMAN, OSTERMAN & HANNAH**      **JOHN J. HENRY, ESQ.**
One Commerce Plaza                  **AMANDA A. MALESZWESKI, ESQ.**
Suite 1900
Albany, New York 12260
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK STATE**     **ADRIENNE J. KERWIN, AAG**
**ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant New York State
Department of Education

**BOND, SCHOENECK & KING**           **JONATHAN B. FELLOWS, ESQ.**
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for Defendants Fayetteville-
Manlius Board of Education, Martin and
Miori-Dinneen

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Amy French, a person with a disability ("Plaintiff"), by her father Gary French, brought this action pursuant to the Individuals with Disabilities Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), 42 U.S.C. § 1983, and Articles 65 and 89 of the New York State Education Law, against Defendants, alleging that they failed to provide her with a free appropriate public education ("FAPE") for the 1995-1996, 1996-1997, 1997-1998, 1998-1999, 1999-2000, 2000-2001, 2001-2002 and 2002-2003 school years.

Currently pending before the Court is Defendant New York State Education Department's ("SED") motion to dismiss the complaint pursuant to Rules 12(b)(1), (2), (5) and (6) of the Federal Rules of Civil Procedure.  Also pending before the Court is Defendants Fayetteville-Manlius Board of Education ("FM"), Martin, and Miori-Dinneen's motion for summary judgment on the grounds that (1) a parent may not appear *pro se* on behalf of a child, (2) Plaintiff's IDEA claims are without merit, (3) Plaintiff's ADA and Rehabilitation Act claims are without merit because Plaintiff fails to allege discrimination beyond a mere violation of the IDEA, (4) section 1983 does not afford the relief Plaintiff seeks, and (5) the state-law claims similarly lack merit as they are merely a codification of the IDEA.  Also pending is Plaintiff's cross-motion, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, for leave to serve the complaint late.  On July 7, 2010, the Court heard oral arguments in support of, and in opposition to the parties' motions and reserved decision.  The following constitutes the Court's determination of the same.

## II. BACKGROUND

Plaintiff was born on March 31, 1982.  She was initially diagnosed with autism in 1985 and began attending school in the Jamesville-DeWitt School District in September 1988.  *See* Affidavit of Gary French sworn to June 11, 2010 ("French Aff."), at ¶¶ 3-4.  Plaintiff remained enrolled in the Jamesville-DeWitt School District until January 1995, at which time Jamesville-DeWitt's Committee on Special Education ("CSE") determined that she could no longer be educated in a public school setting and recommended her enrollment in residential placement. *See id.* at ¶ 4.  At this point, Plaintiff's father transferred custody of Plaintiff to her nurse, who resided in the Fayetteville-Manlius School District (the "District"); and, in September 1995, Plaintiff began attending school in that school district.

Defendant FM's CSE developed an individualized education program ("IEP") for Plaintiff in October 1995.  Plaintiff attended a middle school in the District until May 1996, when she was placed in a foster home in a neighboring district.  After three weeks, she was placed in the home of another nurse in Defendant FM's district.

Plaintiff did not receive services during the summer of 1996 because Defendant FM contested whether Plaintiff was a resident of the District.  Plaintiff's father initiated an appeal pursuant to New York Education Law section 310 to address the residency question; and, on October 17, 1996, the Commissioner of Education ordered Defendant FM to admit Plaintiff to its school tuition free pending a determination of the appeal.

The District's CSE met on October 21, 1996, with Plaintiff's father in attendance, to develop an IEP for Plaintiff.  On December 2, 1996, Plaintiff returned to school.

On March 10, 1997, Plaintiff's nurse resigned; and Plaintiff returned to her father's home

outside the District but continued to attend school in the District.  Defendant FM asked the

Commissioner to find that Plaintiff was no longer a district resident and that her father was liable

for her tuition through the end of the 1996-1997 school year.  The Commissioner ruled on

September 11, 1997, that Plaintiff had not been a resident of the District during the 1996-1997

school year.

Plaintiff and her father moved back into the District on September 20, 1997, and

Plaintiff's father informed Defendant Martin of their change in residency.  Initially, Plaintiff's

father refused to provide Defendant FM with the requested proof of residency.  Eventually, on

December 1, 1997, Plaintiff's father wrote Defendant Martin and enclosed several documents to

verify his new residence.  Defendant FM held a residency hearing on December 23, 1997, where

it was determined that Plaintiff was a resident of the District.[1]

Thereafter, on January 5, 1998, Plaintiff's father met with Defendant Miori-Dinneen to

discuss Plaintiff's placement.  After several disagreements regarding Plaintiff's

evaluation/placement, Defendant Miori-Dinneen asked Plaintiff's father to attend a CSE meeting

to discuss Plaintiff's re-evaluation and her transition back to school.  The meeting was eventually

held on February 27, 1998, and the district developed an "initial placement" IEP.  Plaintiff's

father refused to attend these meetings and instead, on March 3, 1998, submitted a request for an

impartial hearing.  The CSE offered home instruction to Plaintiff, which Plaintiff's father

declined.  Thereafter, the CSE offered to convene a meeting to discuss a program for Plaintiff,

which Plaintiff's father also declined.  Plaintiff's father, however, eventually withdrew his request

---

[1] During the pendency of this residency dispute, Plaintiff was not receiving educational
services from the district.

for an impartial hearing.

The CSE did not develop an IEP for the 2000-2001 school year because of frequent

disagreements and postponed or cancelled meetings.  On September 12, 2001, Plaintiff's father

requested an impartial hearing alleging that, from 1996-2001, Defendant FM had not offered

Plaintiff a FAPE.[2]

### A.      The Impartial Hearing Officer's decision

The due process hearing commenced on May 20, 2002, before an impartial hearing

officer ("IHO").  On May 30, 2002, the IHO ruled that the status quo IEP was the 1996 - 1997

IEP and that this IEP called for homebound instruction.  The IHO also granted Plaintiff's father's

request that the homebound instruction commence with only a certified special education teacher

and directed Defendant FM's CSE to meet and discuss services for Plaintiff.

In a subsequent decision dated January 16, 2003, the IHO denied Plaintiff's father's

request for compensatory education, holding that the District had demonstrated a substantial

willingness to provide Plaintiff with a FAPE.  Specifically, the IHO held that

> [i]n review of the specifics of Mr. French's complaint, above, I
> have identified a number of procedural violations over the course
> of [the case's] time span.  None of these violations can be thought,
> by themselves, or in toto, to have caused Plaintiff to miss out on
> several years of education.  In addition, and as the District points
> out . . . a hearing officer confronted by a request for compensatory
> services must also review the balance of equities that presents
> itself.  My review of the facts of the case leads me to the

---

[2] Plaintiff amended the complaint on December 20, 2001, and again on May 15, 2002, to include complaints about the CSE meetings held on November 14, 2001, and February 5, 2002.

> conclusion that this balance favors the District.  In many instances, the District demonstrated a flexibility and willingness to accommodate its practices to Mr. French's expressed concerns.  There is no doubt that it did not do so in all instances, but the law does not require it to do so.  Mr. French, on the other hand, failed to take advantage of some of that flexibility.
>
> * * * * *
>
> It is undisputed that, beginning in the summer of 1997 and almost continuously since that time, Plaintiff French has not received the education that the IDEA envisions for her.  However, the facts of the case do not allow the conclusion that this failure can be traced back to any determinative violation of the law by the District.  On the contrary, for the most part, the District has demonstrated a substantial willingness to provide Plaintiff with a free appropriate public education foreseen by the Act.  As a result, Mr. French's request for compensatory education is denied.

*See* Affidavit of Jonathan B. Fellows ("Fellows Aff.") at Exhibit "A" ("IHO Decision"), at 54-55.

**B.     The State Review Officer's decision**

Plaintiff's father appealed the IHO's decision.

On appeal, the state review officer ("SRO") dismissed the claims for the first five school years at issue, holding that these claims were barred by a one-year statute of limitations.  *See id.* at Exhibit "B" ("SRO Decision"), at 3-4.  The SRO ruled that Plaintiff's father knew or should have known of his due process rights prior to filing his impartial hearing request on September 12, 2001.  *See id.* at 4.  The SRO noted that Plaintiff's father's knowledge of his due process rights was evidenced by his request for an impartial hearing that he had filed on March 5, 1998, and then later withdrew.

Likewise, the SRO dismissed the challenges to the IEPs that were developed following

-6-

the commencement of the September 2001 hearing.  Specifically, the SRO noted that

> Petitioner amended his initial complaint to include challenges to
> the appropriateness of the IEP's developed at CSE meetings
> conducted on November 14, 2001 and February 5, 2002.  In this
> case it appears that the District was flexible and willing to
> accommodate petitioner's concerns.  The minutes of the November
> 14, 2001 CSE meeting indicate that the CSE reviewed the
> petitioner's document entitled "Parent Considerations," discussed
> the need for updated evaluations, and recommended a home based
> program until those evaluations could be conducted. . . .  The
> program included two hours per day of direct instruction and
> related services of occupational therapy, physical therapy, and
> speech therapy once a week. . . .  The District asserts that it has
> "stood ready, willing and able, through its CSE, to implement a
> program" . . . . Although the record indicates that the student did
> not receive educational services during the 2001-02 school year, I
> find that the student's exclusion from school was not caused by
> District error.  On the contrary, the District created an IEP that it
> was willing to implement.

*See id*.

Plaintiff's father commenced this action on behalf of Plaintiff on April 16, 2004,

appealing the SRO's decision.

# III. DISCUSSION

**A.      Plaintiff's IDEA claims**

Plaintiff asserts that Defendants failed to comply with the IDEA by failing to (1) provide

written IEPs, (2) conduct proper evaluations, and (3) prepare and implement an IEP

individualized to her unique needs.  *See* Complaint at ¶¶ 83, 85.  Moreover, Plaintiff claims that

"the practice by which defendants do not provide prior written notices and individualized

education programs tailored to the unique needs of each disabled child is persistent and

widespread in the District." *See id.* at ¶ 84.  Defendants assert that they complied with the IDEA and that Plaintiff's lack of a formal education during this period was not because the District was unwilling to provide Plaintiff with a FAPE, but because Plaintiff's father repeatedly demonstrated an unwillingness to permit his daughter to attend school pursuant to any IEP in place, regardless of its reasonableness and regardless of whether the District provided him with every item of relief he requested.

The creation of an IEP for each disabled student is central to the scheme set forth in the IDEA and New York's regulations under the Act.  *See Board of Education v. Rowley*, 458 U.S. 176, 197 (1982).  An IEP must be developed and implemented at the beginning of each school year, *see* 20 U.S.C. § 1414(d), and provide a "'basic floor of opportunity,' consisting of services that are 'individually designed to provide educational benefits' to a child with a disability[,]" *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003) (citation and footnote omitted).

The IDEA imposes a number of procedural requirements on participating states in order to safeguard a child's right to a FAPE.  *See* 20 U.S.C. § 1415.  The procedural safeguards "guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think are inappropriate." *Honig v. Doe*, 484 U.S. 305, 311-12 (1988).  If the parent or guardian of a New York child is unhappy with the IEP that has been developed, he may demand an impartial hearing before an IHO, who determines the IEP's appropriateness.  *See Grim*, 346 F.3d at 379 (citations omitted); *see also* 20 U.S.C. § 1415(f); N.Y. Educ. L. § 4404(1).  If the parent or guardian is not satisfied with the IHO's decision, he may appeal that decision to the SRO.  *See* N.Y. Educ. L. § 4404(2).

-8-

Finally, once a parent has exhausted these administrative remedies, he may appeal to the New York State supreme court or United States district court to review the SRO's decision. *See* 20 U.S.C. § 1415(i)(2)(B).

### 1. Timeliness of Plaintiff's IDEA claims

Prior to 2005, the IDEA and its implementing regulations did not contain a statute of limitations. As such, the Second Circuit directed that the IHO, SRO, and courts should apply the "most appropriate or analogous state statute of limitations" and that the limitations period will run from the date that the plaintiff knew or should have known of his injury. *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221-22 (2d Cir. 2003) (quotation omitted). The IDEA now provides that "a parent shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C). An appeal from a final decision of the agency must be brought in the district court within "90 days from the date of the decision of the hearing officer." 20 U.S.C. § 1415(i)(2)(B).

In this case, the SRO determined that the appropriate statute of limitations was the one-year statute of limitations for human rights actions found in N.Y. Exec. L. § 297(5). *See* Dkt. No. 26-1 at Exhibit "B," at 3-4. Moreover, the SRO found that Plaintiff's father knew or should have known of his due process rights prior to September 12, 2001 (the date he filed his initial request for a due process hearing) for the injury that he was alleging. *See id.* at Exhibit "B" at 4. In fact, Plaintiff's father requested an impartial hearing on March 5, 1998, but then later withdrew his request. *See id.* Accordingly, the SRO found that Plaintiff's claims with regard to the 1996-

2001 school years were untimely.  *See id.*

The Second Circuit recently affirmed this Court's affirmance of the SRO's adoption of the one-year statute of limitations period in another matter arising under the IDEA.  *See E.H. v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist.*, 361 Fed. Appx. 156, 158 (2d Cir. 2009) (citation omitted).

Plaintiff's sole argument in support of her position that these claims are timely is that Defendants overlooked the fact that she was required to exhaust her administrative remedies prior to commencing this federal proceeding.  *See* Dkt. No. 76-3 at 18-21.  Plaintiff provides an abundance of authority discussing the administrative exhaustion requirements, which no one disputes are mandatory and jurisdictional in nature.  *See id.*  Missing from Plaintiff's analysis, however, is any discussion of why the Court should excuse Plaintiff's failure to file an impartial hearing request prior to September 12, 2001, and how that failure renders Plaintiff's IDEA claims regarding the 1996-1997, 1997-1998, 1998-1999, 2000-2001 school years timely.  Plaintiff is confusing the issue.  Defendants are not asserting that the present federal-court action is untimely but that Plaintiff's complaint seeking administrative review was untimely for several of the years in question.  This untimeliness prevents this Court from reviewing Plaintiff's claims pertaining to the 1996-2000 school years.

Based on the foregoing, the Court holds that the SRO properly found that Plaintiff's IDEA claims from the 1996-1997, 1997-1998, 1998-1999, and 1999-2000 school years are untimely. However, because the conduct in Plaintiff's complaint concerning the 2000-2001 school year clearly occurred within the then-applicable one-year statute of limitations, the Court finds that the SRO improperly determined that Plaintiff's complaints regarding the 2000-2001 school year were

untimely.[3]

### 2. Plaintiff's IDEA claims against Defendants FM, Martin, and Miori-Dinneen

When a party moves for summary judgment in an IDEA action, the normal inquiry as to whether there are any disputed material facts does not apply.  *See New Waltz Cent. Sch. Dist. v. St. Pierre,* 307 F. Supp. 2d 394, 397 (N.D.N.Y. 2004).  Instead, the inquiry is "whether the administrative record, together with any additional evidence, establishes that there has been compliance with [the] IDEA."  *Id.*  The district court must engage in an independent review of the administrative record and make a determination based on a 'preponderance of the evidence.'" *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) (internal citation omitted).

To help guide courts in this review, the Supreme Court has set forth a two-part test.  First, the court must ask whether the school district complied with the procedures set forth in the IDEA.  *See Rowley*, 458 U.S. at 206.  Second, the court must ask whether the IEP, "developed through the [IDEA's] procedures[, is] reasonably calculated to enable the child to receive educational benefits[.]"  *Id.* at 206-07.  For a court to set aside an IEP on procedural grounds, there must be some evidence that the procedural defects compromised the student's right to receive an appropriate education, seriously hampered the parents' opportunity to participate in the IEP's formulation process, or caused a deprivation of educational benefits.  *See* 20 U.S.C. §

---

[3] Although the claims concerning the 1996-2000 school years is untimely, the Court will discuss those years to the extent that the conduct surrounding those claims are relevant to Plaintiff's claims regarding the 2000-2001, 2001-2002, and 2002-2003 school years.

1415(f)(3)(E)(ii); *see also Winkelman v. Parma City Sch. Dist.*, 127 S. Ct. 1994, 2001 (2007).

The party challenging the IEP bears the burden of proof. *See Schaffer v. Weast*, 546 U.S. 49, 62

(2005).

While engaging in this analysis, it is important to recognize that "courts lack the

specialized knowledge and experience necessary to resolve persistent and difficult questions of

educational policy." *Rowley*, 458 U.S. at 208.  Thus, the Supreme Court has warned that judicial

review of administrative decisions under the IDEA "is by no means an invitation to the courts to

substitute their own notions of sound educational policy for those of the school authorities which

they review." *Id.* at 206.  Therefore, the IDEA "requires substantial deference to state

administrative bodies on matters of educational policy." *Cerra v. Pawling Cent. Sch. Dist.*, 427

F.3d 186, 191 (2d Cir. 2005).  Accordingly, "[f]or a federal court to conduct an 'independent'

review of a challenged IEP without 'impermissibly meddling in state educational methodology,' it

must examine the record for any 'objective evidence' indicating whether the child is likely to

make progress or regress under the proposed plan." *Walczak v. Fl. Union Free Sch. Dist.*, 142

F.3d 119, 130 (2d Cir. 1998) (citations omitted).

In the present matter, Plaintiff's father repeatedly makes reference to the fact that Plaintiff

received no education during the years in question because of Defendant FM's failures to abide

by the IDEA's requirements.  A review of the record, however, shows that Plaintiff's lack of a

formal education during this period was not due to the District's unwillingness to provide her

with a FAPE, but because Plaintiff's father repeatedly demonstrated an unwillingness to permit

Plaintiff to attend school pursuant to any IEP in place, regardless of its reasonableness and

regardless of whether the District provided him with every item of relief he requested.

-12-

During the 1996-1997 school year, Defendant FM challenged Plaintiff's residency. The District implemented a "stay put" IEP pursuant to the Commissioner's order while the residency appeal was being decided. The IHO correctly found that the District established an IEP as required but that Plaintiff's father refused to avail himself of these services. Moreover, Plaintiff's claim for compensatory education for the 1996-1997 school year is entirely without merit because the Commissioner found that Plaintiff did not reside in the District during that year; and, therefore, Defendant FM was not required to provide her with an FAPE. *See* IHO Decision at 13-14.

During the 1997-1998 school year, although Plaintiff presumably moved back into the District in September of 1997, Plaintiff's father refused to acquiesce to the district's reasonable request that he provide the District with his apartment lease to prove Plaintiff's residency. Although Plaintiff's father offered other forms of proof of residency, it was not until November that he actually sent these documents to Defendant Martin. Defendant Martin then ordered a residency hearing for the end of November, at which point it was determined that Plaintiff was a District resident. Thereafter, Defendant Miori-Dinneen continually tried to get Plaintiff's father to attend a CSE meeting to establish an appropriate IEP for Plaintiff, and Plaintiff's father subsequently withheld Plaintiff from the programs that Defendant FM's CSE developed. *See* IHO Decision at 15-16. The District rescheduled the CSE meeting a number of times to try to accommodate Plaintiff's father, and the meeting was eventually held on February 27, 1999, to develop an initial placement for Plaintiff. *See id.* at 16-17. Thereafter, Plaintiff's father filed a request for an impartial hearing on March 5, 1998.

During the pendency of the impartial hearing, Defendant Miori-Dinneen attempted to

establish an "interim educational placement."  Plaintiff's father believed that, because the CSE

procedures were the subject of his due process complaint, they were not an appropriate forum to

discuss Plaintiff's interim placement; and, therefore, he would only meet with District personnel

on an informal basis.  *See id.* at 17-19.  Moreover, Plaintiff's father repeatedly rescheduled the

hearing dates, causing a delay of several weeks.  After the district presented its case, Plaintiff's

father withdrew his request for an impartial hearing.  *See id.*

This is only one example of the dilatory tactics Plaintiff's father employed throughout the

years in question.  He repeatedly delayed the implementation of Plaintiff's proposed IEPs,

regardless of how reasonable they were and regardless of whether they provided every item of

relief he requested.  Plaintiff's lack of a FAPE during the relevant time period was caused, almost

exclusively, by her father's dilatory tactics and unwillingness to compromise.  *See id.*

During the years not barred by the statute of limitations, Plaintiff's father exhibited the

same behavior, while Defendant FM repeatedly demonstrated its willingness to accommodate his

numerous concerns.  For example, the minutes of the November 14, 2001 CSE meeting indicate

that the CSE reviewed Plaintiff's father's document, entitled "Parent Considerations," discussed

his request for updated evaluations, and recommended a home-based program until those

evaluations could be conducted.  *See* SRO Decision at 4 (citing District Exhibits 190, 192).  This

proposed program included two hours per day of direct home instruction, as well as the related

services of occupational therapy, physical therapy, and speech therapy once a week.  *See id.*

(citing District Exhibit 193).  Plaintiff's father was the one who first recommended a home-based

instruction program; but when the District acquiesced to his requests, he refused to allow

Plaintiff to participate.

In *Grim*, the parent claimed that procedural violations of the IDEA denied his child a FAPE.  *See Grim*, 346 F.3d at 381.  The Second Circuit noted that it was without question that procedural violations could, in certain instances, deprive a child an FAPE protected by the IDEA.  *See id.*  The Circuit noted, however, that the district developed IEPs that were adequate to confer educational benefits on the child, which would have been available had the parent decided to avail himself of the offered services.  *See id.*  Accordingly, the court concluded that, "[b]ecause the programs were both appropriate and available, any delay in resolving the parents' challenges to them [could not] have prejudiced [the child's] education." *Id.* at 382 (citing *J.D. v. Pallet School District*, 224 F.3d 60, 69-70 (2d Cir. 2000)).  Moreover, the Second Circuit stated that, when reviewing the substantive sufficiency of an IEP, the district court must review the record before the SRO for "'any objective evidence indicating whether the child is likely to make progress or regress under the proposed plan.'" *Id.* at 383 (quotation and other citation omitted).  The Second Circuit upheld the IHO's and SRO's determinations, finding that the district court impermissibly imposed its views and chose between conflicting expert testimony.  *See id.*

In this case, both the IHO and SRO conducted particularly thorough reviews of Plaintiff's father's claims and determined that they were without merit.  Specifically, the impartial hearing lasted fourteen days, beginning on May 20, 2002, and concluding on October 17, 2002.  *See* IHO Decision at 2.  Moreover, Defendant FM introduced 240 exhibits and called three witnesses to provide testimony, while Plaintiff's father presented six witnesses and some 200 exhibits.  *See id.* at 2-3.  Further, each party submitted post-hearing briefs summarizing their arguments and the applicable law.  *See id.*  The parties presented this record to the SRO who considered it in affirming the IHO's decision.  Considering the thoroughness of the IHO's and SRO's decisions,

-15-

and based on an independent review of the record, the Court grants Defendant FM's motion for summary judgment with respect to Plaintiff's IDEA claims. *See Grim*, 346 F.3d at 382-83 (upholding the administrative determinations that the child's IEPs were adequate and noting that, "[h]ad her parents chosen to avail themselves of these programs, they would have been available . . . for the years in question").[4]

Based on the record before the Court, it is clear that, although Defendant FM may have committed several procedural violations under the IDEA, it was, throughout the relevant time period, willing and able to provide Plaintiff with an FAPE and that it repeatedly went beyond the IDEA's requirements to develop an IEP that would satisfy Plaintiff's father. Further, it is clear that Defendant FM's proposed IEPs would have helped Plaintiff progress, as both the IHO and SRO correctly indicated. *See* SRO Decision at 4.

### 3. Plaintiff's IDEA claim against Defendant SED

The state is only a proper party to an action brought pursuant to the IDEA if the claim is a "systemic" one. *See Quatroche v. East Lyme Bd. of Educ.*, 604 F. Supp. 2d 403, 411 (D. Conn. 2009) (quotations omitted). "A 'systemic claim' is one which 'implicates the integrity of the IDEA's dispute resolution procedures themselves, or requires restructuring of the education

---

[4] Summary judgment is also appropriate because Plaintiff is now over the age of twenty-one and, therefore, **Plaintiff is limited to seeking compensatory education under the IDEA**, which would require a finding that Defendants committed "'gross' procedural violations." *See Garro v. Connecticut*, 23 F.3d 734, 737 (2d Cir. 1994) (holding that, when the student reaches the age of twenty-one, the only available remedy under the IDEA is for compensatory education and only when the defendants have committed "'gross' procedural violations" (citation omitted)). The IHO and SRO properly found that Plaintiff's father fell far short of meeting the high standard necessary to establish entitlement to such an award.

system itself in order to comply with the dictates of the [IDEA].'" *Id.* (quotations omitted).  "The claim must allege 'a pattern and practice of systemic [IDEA] violations unable to be addressed at the due process hearings provided in [New York].'" *Id.* (quotation and other citation omitted).

In the complaint, Plaintiff makes only vague references to "the defendants" and only individually references Defendant FM as engaging in any specific conduct.  *See* Complaint at ¶¶ 72-90.  Plaintiff does not allege that a particular SED policy caused her injury or that this is anything other than a challenge to an administrative decision regarding a particular IEP development process.  *See, e.g., B.J.S. v. State Educ. Dep't*, ___ F. Supp. 2d ___, 2010 WL 1172598, *10 (W.D.N.Y. Mar. 23, 2010) (holding that "[t]he controversy over the propriety of the IEP and whether it deprives the student of an FAPE remains one between the student, or, as here, the student's parents, and the local educational agency because, under the Act, the primary responsibility for formulation and implementation of an FAPE and IEP is that of the relevant educational agency, in this case the School District, not State Defendants" (collecting cases)).

In this case, Plaintiff's father has not alleged a "systemic claim," but merely his dissatisfaction with a school district's implementation of the IDEA and what the district believes constitutes an appropriate education for Plaintiff.  Plaintiff's father makes no assertions that the due process hearing was an insufficient mechanism to handle his complaint; he simply disagrees with the outcome.  Accordingly, the Court grants Defendant SED's motion to dismiss Plaintiff's IDEA claim.

**B.**     **Eleventh Amendment immunity**

Defendant SED claims that the Eleventh Amendment bars Plaintiff's Article 89, section

-17-

1983 and ADA claims.  The Eleventh Amendment to the United States Constitution bars federal

courts from exercising subject matter jurisdiction over claims against states absent their consent

to such a suit or an express statutory waiver of immunity.  It is well-settled that states are not

"persons" under section 1983; and, therefore, that statute does not abrogate Eleventh Amendment

immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Moreover, this

immunity extends to state agencies and state officials sued in their official capacities.  *See*

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985).[5]


### 1. Plaintiff's Article 89 claim against Defendant SED

Plaintiff claims that Defendant SED violated her rights under Article 89 of the New York

State Education Law.  Ordinarily, because the Court may properly exercise original jurisdiction

over Plaintiff's federal claims, it may also exercise jurisdiction over Plaintiff's state-law claims

under 28 U.S.C. § 1367(a)'s grant of supplemental or pendent jurisdiction.  However, "§

1367(a)'s grant of supplemental jurisdiction does not extend to claims against nonconsenting

state defendants."  *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 542 (2002) (emphasis

removed).  Therefore, only if Article 89 contains a clear waiver of New York's immunity would

the exercise of supplemental jurisdiction be proper.

Since Article 89 does not contain such a waiver, the Court dismisses Plaintiff's Article 89

claims against Defendant SED.  *See African Am. Legal Defense Fund, Inc. v. N.Y. State Dep't of*

*Educ.*, 8 F. Supp. 2d 330, 335 (S.D.N.Y. 1998) (dismissing claims against the New York State

---

[5] It is well-settled that a plaintiff cannot sue either the State or its agencies, including Defendant SED, under section 1983.  *See Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998). Accordingly, the Court dismisses Plaintiff's section 1983 claims against Defendant SED.

Department of Education that were based on the New York State Education Law).

### 2. Plaintiff's ADA claim against Defendant SED

In her fourth cause of action, Plaintiff claims that Defendant SED discriminated against her in violation of the ADA.  In *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001), the Supreme Court held that the Eleventh Amendment bars claims for monetary damages under Title I of the ADA but declined to answer the question of whether such immunity bars suit against the state for claims made under Title II.  Plaintiff brings suit pursuant to Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

Following *Garrett*, the Second Circuit held that the Eleventh Amendment permits privates suits for money damages under Title II, but only insofar as a "plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112-13 (2d Cir. 2001).

There are no allegations in the complaint that Defendant SED acted with a "discriminatory animus" or "ill will" towards Plaintiff on the basis of her disability.  Accordingly, the Court dismisses Plaintiff's ADA claim against Defendant SED.  *See Scaggs v. N.Y.S. Dep't of Educ.*, No. 06-CV-799, 2007 WL 1456221, *23 n.19 (E.D.N.Y. May 16, 2007) (dismissing the plaintiff's ADA claim on Eleventh Amendment grounds because the plaintiff failed to allege that defendants' "behavior or failure to act were the result of 'discriminatory animus' or 'ill will'

towards plaintiffs on the basis of disability"); *see also Olson v. New York*, No. 2:04-cv-419, 2007 WL 1029021, *6-*9 (E.D.N.Y. Mar. 30, 2007) (citing cases).

**C.     Plaintiff's section 1983 claims against Defendants FM, Martin and Miori-Dinneen**

Pursuant to section 1983, Plaintiff alleges that Defendants FM, Martin and Miori-Dinneen, "motivated by improper motive or intent," caused her to be deprived of "rights secured to her by federal law."[6]

To state a claim for relief under section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges or immunities secured by the Constitution or federal law (2) by a person acting under the color of state law. *See* 42 U.S.C. § 1983.  Section 1983 does not itself provide substantive rights, but merely offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quotation omitted).

First, Plaintiff has failed to allege a *Monell* claim against Defendant FM.  *See Booker v. Bd. of Educ.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002) (holding that "school districts are considered to be local governments and are subject to similar liability as local governments under *Monell*" (citation omitted)).  Since Plaintiff failed to allege that a pattern of unconstitutional conduct caused her FAPE deprivation or that Defendant FM was deliberately indifferent by failing to intercede, train, or supervise its employees in order to protect her rights, the Court

_____

[6] It is not entirely clear what "federally protected rights" or "federal laws" Plaintiff alleges Defendants violated.  Aside from a possible attempt to assert an equal-protection violation, which clearly fails on its face, this cause of action appears to be nothing more than a reiteration of Plaintiff's IDEA claim, and possibly her ADA and Rehabilitation Act claims as well.

dismisses Plaintiff's section 1983 claims against Defendant FM.  *See id.*

Second, Plaintiff's father is seeking to bypass his inability to obtain monetary damages under the IDEA by bringing suit pursuant to section 1983.  Plaintiff's complaint makes clear that the alleged section 1983 violations are merely a reiteration of his IDEA claims, as they attack Defendant FM's alleged noncompliance with the IDEA and its effects on Plaintiff.  *See* Complaint at ¶¶ 97-98.  Plaintiff's father does not allege that he was denied procedural safeguards or administrative remedies and, therefore, "he may not rely on § 1983 to pursue monetary damages for violations of the IDEA."  *Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.*, 280 Fed. Appx. 66, 68 (2d Cir. 2008) (citing cases).

Accordingly, the Court dismisses Plaintiff's section 1983 claims against Defendants FM, Martin and Miori-Dinneen.


### D.    Plaintiff's ADA and Rehabilitation Act claims

Plaintiff asserts that Defendants violated the ADA "in failing to identify Plaintiff's educational needs through comprehensive evaluations and reasonably accommodating her disabilities, failed to provide her with both an FPE and a[n] FAPE due her under federal law, and, in failing to do so, discriminated against her on the basis of her disability[.]"  *See* Complaint at ¶ 106.  Further, Plaintiff asserts that "Defendants, in failing to reasonably accommodate [her] disabilities, discriminated against her on the basis of her disability in violation of Section 504 of the Rehabilitation Act[.]"  *See id.* at ¶ 113.

Under both the ADA and Rehabilitation Act, schools are required to provide "a free appropriate public education" through special education and related services.  *See, e.g.,* 34 C.F.R.

§ 104.33; 28 C.F.R. § 35.103.  While the IDEA addresses incorrect or erroneous special education treatments, the ADA and Rehabilitation Act address discrimination against disabled students.  Thus, "something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities, *i.e.*, a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment." *Wenger v. Canastota Cent. Sch. Dist.*, 979 F. Supp. 147, 152 (N.D.N.Y. 1997) (citations omitted); *see also R.B. ex rel. L.B. v. Bd. of Educ. of the City of N.Y.*, 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000).

The Second Circuit has distinguished between "(i) making reasonable accommodations to assure access to an existing program and (ii) providing additional or different substantive benefits."  *Wright v. Giuliani*, 230 F.3d 543, 548 (2d Cir. 2000) (citations omitted).  The ADA and Rehabilitation Act mandate the former but not the latter.  In other words, although the school district must offer reasonable accommodations to ensure meaningful access to the program, the statutes do not require that substantial changes be made to the program itself.  *See J.D. ex rel. J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 70 (2d Cir. 2000) (quotation omitted).  Therefore, under the disability discrimination statutes, a plaintiff may challenge access to, but not the content of, the programs at issue.

### 1. Defendant SED's motion to dismiss Plaintiff's ADA and Rehabilitation Act claims

In this case, Plaintiff makes no allegation in the complaint that Defendant SED acted with bad faith or gross misjudgment.  Rather, the disability discrimination claim is substantially the same as the IDEA claim – allegations that Defendant SED failed to make necessary evaluations

to develop a proper IEP for Plaintiff and that it failed to offer prompt administrative review. Plaintiff's challenge is thus related to the substantive contours of the program as applied to her, not to any decision to deprive her of access to the program itself.

Moreover, the administrative record and Plaintiff's arguments clearly establish that she was, in fact, offered "'access to an existing program'" and that an IEP was created and, when Plaintiff's father would allow it to be, implemented. *See Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.*, 280 Fed. Appx. 66, 68 (2d Cir. 2008) (citation omitted). As such, the record clearly demonstrates that Plaintiff was afforded access to Defendant FM's program and that her father is merely challenging "the content and sufficiency of the IEP," and, therefore, "the complaint demands 'additional or different benefits.'" *Id.* (citation omitted).

Since Plaintiff has not alleged bad faith or gross misjudgment with respect to Defendant SED, and because Plaintiff is seeking "'additional or different benefits,'" the Court grants Defendant SED's motion to dismiss Plaintiff's ADA and Rehabilitation Act claims.

### 2. Defendants FM, Martin and Miori-Dinneen's motion for summary judgment as to Plaintiff's ADA and Rehabilitation Act claims

As a preliminary matter, because there is no individual liability under the ADA or the Rehabilitation Act, Plaintiff's claims under these statutes as to the individual Defendants in their individual capacities are subject to dismissal. *See Menes v. CUNY*, 92 F. Supp. 2d 294, 306 (S.D.N.Y. 2000) (quotation and citations omitted). Furthermore, Plaintiff's claims against the individual Defendants in their official capacities are merely duplicative of her claims against Defendant FM; and, therefore, the Court dismisses those claims as redundant.

Plaintiff has neither alleged nor established that Defendants FM, Martin or Miori-Dinneen acted with gross misjudgment or bad faith with regard to any failures that may have occurred.  Both the IHO and SRO concluded that Defendant FM was willing and able to implement an IEP so that Plaintiff could continue her education in the District.  The IHO specifically noted, on several occasions, Defendant FM's flexibility and willingness to accommodate Plaintiff, as well as Plaintiff's father's unwillingness to take advantage of that flexibility.  *See* IHO Decision at 52-54.  The record clearly demonstrates that Defendants FM, Martin and Miori-Dinneen did not act with bad faith or gross misjudgment and that the only reason that Plaintiff may not have received an FAPE during the years at issue is because of her father's inflexible and unreasonable demands.  Finally, as discussed above, Plaintiff is clearly attacking "the content and sufficiency of the IEP;" and, therefore, "the complaint demands 'additional or different benefits.'"  *Id.* (citation omitted).  Such a complaint is properly brought under the IDEA and not the ADA or Rehabilitation Act.

Based on the foregoing, the Court grants Defendants FM, Martin and Miori-Dinneen's motion for summary judgment with respect to Plaintiff's ADA and Rehabilitation Act claims.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant SED's motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that Defendants FM, Martin and Miori-Dinneen's motion for summary judgment is **GRANTED;** and the Court further

**ORDERS** that Plaintiff's motion to serve his amended complaint late is **DENIED** as

moot; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and

close this case.

**IT IS SO ORDERED.**

Dated: September 30, 2010
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

-25-